[For other cases involving this patent, see note to Ormsbee v. Wood. Case No. 10,579.]

WINGARD (BROWN v.). See Case No. 2,-034.

WINGED RACER, The (GILLIGAN v.). See Case No. 5,439.

WINGED RACER, The (TORICES v.). See Case No. 14,102.

## Case No. 17,872.

The WINGS OF THE MORNING.

[5 Blatchf. 15.] [1]

Circuit Court, S. D. New York.   Nov. 6, 1861.

COLLISION—MUTUAL FAULT—ABSENCE OF LOOKOUT—EXCESSIVE SPEED—COSTS ON APPEAL.

1. Where a sailing vessel, coming into the Hudson river, at New York, off the Battery, in the night time, put her head to the wind and her sails aback, with a view to anchoring, before the hands on board of her discovered a steam vessel in motion coming towards her, but it appeared that she had no competent lookout, and that, if she had had one, the steam vessel might have been seen in time to prevent the placing of the sailing vessel on her track: *Held*, a collision having taken place between the two vessels, that the sailing vessel was in fault. *Held*, also, that the steam vessel was in fault for descending the river in the night too near to the shore, and at too great a rate of speed, at a locality where her lights were mistaken for the lights of vessels at anchor, and where she was liable to meet vessels coming in to anchor.

2. As both vessels were in fault, the damages were divided; and, as both parties had appealed, and the decree below was affirmed, no costs were given to either party, on appeal.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, against the ship Wings of the Morning, to recover for damage caused to the barge Stephen Warren, by a collision which occurred between the two vessels, in the Hudson river, at New York, off pier number 4, on the night of November 22, 1852. The barge was lashed to the steam tug General Wool, on her starboard side. The tug was descending the river with her tow, a quarter or a third of the way from the New York side, intending to pass around the Battery into the East river, for the purpose of discharging her cargo. The Wings of the Morning was coming up the river, having taken in all her sails except the spanker, preparatory to dropping anchor in the stream. The wind was southeast or south-southeast, and the tide was ebb. The Wings of the Morning had come up the river near the middle of it, and had ported her helm to luff into the wind and check her headway, to enable her to drop anchor, and was in the act of dropping it, or about to drop it, as the mate discovered the tug and tow coming down upon him. The district court held, that both vessels were in fault, and divided the damages. [Case unreported.] Both parties appealed to this court.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Edward H. Owen and Cornelius Van Santvoord, for libellants.

Charles Donohue and Washington Q. Morton, for claimants.

NELSON, Circuit Justice. The main point of dispute is, whether or not the order to port was given, and the change of the direction of the ship had taken place in pursuance thereof, after the tug and tow were seen by the hands on board of the ship. If the order was given afterwards, or even after the tug and tow might have been seen with a proper lookout, then the ship was in fault in giving the order. On this point there is much conflict in the proofs. The result of my examination is, that the order to port was given, and the change of the direction of the ship, which placed her on the track of the tug and tow, took place, before her hands had discovered them in motion; and that, with her sails aback and her head to the wind, she was disabled from avoiding the collision. But, at the same time, I agree with the court below, that, with a competent lookout properly attending to his duty, the descending vessels might have been seen in time to prevent the manœuvre and the heading of the vessel in shore across their track. The night was not very dark, and the chief difficulty in discovering the tug and tow arose from the great number of vessels at anchor, with lights, in that locality. The hands on the ship saw the lights of the descending vessels in time to have avoided them, but mistook them for the lights of vessels at anchor.

I also agree with the court below, that the tug was in fault for descending the river in the night so near the shore in that locality, and at a rate of speed of five miles an hour, with the tide; and, according to the testimony of the captain of the barge, probably at a greater rate of speed. These vessels were on their way around the Battery to the East river, and should have kept further out into the river, outside of vessels at anchor with lights, and clear of vessels coming in to anchor in the night on the New York side.

The decree must be affirmed, but without costs to either party, as both parties have appealed.